IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

THOMAS ECKHOLT,

Defendant.

Case No. CR12-3037

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.  PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.  RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.  ISSUE PRESENTED* . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*V.  DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   A.  *Was the Warrantless Search Authorized by the Automobile Exception?* . . . . . . . . . . . . . . . . . . . . . . 4
   B.  *Was the Search a Lawful Inventory Search?* . . . . . . . . . . . . . . . . 7

*VI.  RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . 12

*I. INTRODUCTION*

On the 17th day of October 2012, this matter came on for hearing on the Motion to Suppress (docket number 17) filed by the Defendant on October 5, 2012. The Government was represented by Assistant United States Attorney John H. Lammers. Defendant Thomas Eckholt appeared in court and was represented by his attorney, Jill M. Johnston.

## II. PROCEDURAL HISTORY

On August 30, 2012, Defendant Thomas Eckholt was charged by Indictment with one count of possession with intent to distribute five grams or more of actual (pure) methamphetamine, after having been previously convicted of a felony drug offense. Defendant pleaded not guilty and trial was scheduled for November 13, 2012. Following a hearing, Defendant was ordered detained pending trial.

On October 5, 2012, Defendant timely filed the instant motion to suppress. The Government filed a resistance on October 12. Because of the pending motion, the trial was continued to November 26.

## III. RELEVANT FACTS

At approximately 1:30 a.m. on July 26, 2012, Lieutenant Matt Klunder of the Cerro Gordo County Sheriff's Office recognized Defendant's vehicle being driven in Mason City. Klunder knew that a warrant had been recently issued for Defendant's arrest for an alleged violation of a no contact order. Without activating his top lights or siren, Klunder pursued Defendant's vehicle with an intent to stop it. Before Klunder caught up with the vehicle, however, Defendant pulled over and parked along the curb in a residential area.[1] As Klunder approached, he observed Defendant exiting his vehicle. By the time Klunder stopped and approached Defendant, they were near the back of Defendant's vehicle. Defendant waited for Klunder and did not attempt to leave.

Lt. Klunder advised Defendant of the outstanding warrant and placed him under arrest. During a search of Defendant's person incident to the arrest, Klunder found a marijuana pipe in Defendant's shorts pocket. Klunder described Defendant's demeanor during this time as calm, friendly, and cooperative. Defendant did not seem nervous and Klunder did not detect any odor of drugs. Klunder briefly looked in the car as Defendant stood – handcuffed – between the vehicles.

---

[1] Lt. Klunder confirmed at the hearing that the vehicle was legally parked.

2

After placing Defendant in his squad car, Lt. Klunder then searched Defendant's vehicle. The vehicle is described as a Toyota 4-Runner, with a removable hardtop. With the top removed, the vehicle has a similar appearance to a pickup truck, although there is no "rear window," and the driver's compartment is exposed to the back. That is, when the hardtop is removed – as it was that night – the driver's compartment cannot be secured.[2]

Lt. Klunder testified that he has known Defendant for a number of years, and assisted in his arrest in 2006 on a felony drug charge.[3] According to Klunder, who until recently was assigned to the North Central Iowa Narcotics Task Force, authorities have received information that Defendant is still involved in the distribution of methamphetamine. During the past summer (prior to these events on July 26), Klunder assisted in surveillance when Defendant allegedly delivered methamphetamine to an apartment, where it was purchased by a confidential informant during a controlled buy.

Lt. Klunder testified that he believed marijuana would be found in the car because Defendant had a marijuana pipe on his person, but no marijuana was found on Defendant's person. Because the vehicle could not be secured at the site, Klunder decided to impound the vehicle and called a tow truck. Pursuant to the sheriff's office's policy, it was necessary to conduct an inventory search "so as to protect the employee and the county from possible allegation of damage or theft and to protect the property contained within the impounded vehicle."[4] A search of the vehicle revealed a large quantity of methamphetamine.

---

[2] Defendant's Exhibit C depicts a similar vehicle, with the hardtop removed. Defendant's Exhibit B reflects a similar vehicle, with the hardtop in place. It may be noted parenthetically that Defendant's vehicle did not have large tires, as reflected in Exhibits B and C.

[3] Government's Exhibit 3 reflects Defendant was charged with possession of methamphetamine with intent to deliver, and received a 10-year suspended prison term for a felony drug conviction.

[4] *See* Defendant's Exhibit A (docket number 17-2) at 1.

3

## IV. ISSUE PRESENTED

Defendant asserts that the warrantless search of his vehicle violated the Fourth Amendment. The Government argues that the search was authorized under the "automobile exception" to the warrant requirement or, alternatively, as a permissible inventory search.

## V. DISCUSSION

### A. Was the Warrantless Search Authorized by the Automobile Exception?

The Fourth Amendment protects persons and their property against unreasonable searches. Searches conducted without a warrant are *per se* unreasonable, subject to a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). Officers may conduct a warrantless search of an automobile pursuant to the so-called "automobile exception," if they have probable cause to believe that the vehicle "contains contraband or other evidence of a crime." *Id.* at 1140-41. "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 1141 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The government has the burden of establishing an exception to the warrant requirement. *Id.* at 1140.

Here, Lt. Klunder approached Defendant after he had exited his vehicle. Defendant was arrested on an outstanding warrant for an alleged violation of a no contact order.[5] During a search of Defendant's *person* incident to his arrest, Klunder found a marijuana pipe. The issue is whether Klunder's discovery of drug paraphernalia, coupled with his

---

[5] The Government apparently concedes that the vehicle could *not* be searched incident to his arrest. *See Arizona v. Gant*, 556 U.S. 332 (2009) (holding that police may search the passenger compartment of a vehicle incident to arrest only if (1) the arrestee might have access to the vehicle at the time of the search, or (2) it is reasonable to believe the vehicle contains evidence of the offense of the arrest). *But see United States v. Hambrick*, 630 F.3d 742, 747 (8th Cir. 2011) (holding that even when *Gant* would not allow the officers to search the vehicle for evidence of the offense of arrest, officers may nonetheless search the vehicle pursuant to the automobile exception if the requisite probable cause is established).

4

knowledge of Defendant's prior drug conviction and apparent ongoing drug activity, established probable cause to believe that contraband could be found in the vehicle.

Probable cause for an officer to search a suspect's vehicle absent a warrant may be established in a variety of ways, including: drugs or drug paraphernalia visible in plain view inside a vehicle, *United States v. Cortez-Palomino*, 438 F.3d 910, 913 (8th Cir. 2006); specific, detailed, and corroborated tips from a reliable source that a vehicle contains contraband, *United States v. Hambrick*, 630 F.3d 742, 747 (8th Cir. 2011); *United States v. Dactu*, 627 F.3d 1074, 10778-79 (8th Cir. 2010); a drug dog's "indication" or "alert" while sniffing a vehicle, *United States v. Claude X*, 648 F.3d 599, 602 (8th Cir. 2011); or the odor of drugs emanating from a suspect or his vehicle, *United States v. Caves*, 890 F.2d 87, 91 (8th Cir. 1989). None of those circumstances exist here. The parties have not cited any cases where drug paraphernalia on a suspect's person and knowledge of his past and current drug involvement was relied on to establish probable cause to search his vehicle, and the Court has found none.

While the Eighth Circuit has yet to rule in a case with the same factual circumstances which are present here, it recently considered a similar issue in *United States v. McManaman*, 673 F.3d 841 (8th Cir. 2012), *petition for cert. filed*, 12 U.S.L.W. 146 (July 30, 2012). In *McManaman*, a grand jury indicted the defendant on various gun and drug charges, and the police went to the defendant's home to arrest him pursuant to an arrest warrant. *Id.* at 844. While searching the defendant's person outside his house incident to his arrest, the officers found a marijuana pipe and methamphetamine pipe. *Id.* The police then conducted a warrantless search of the defendant's home and found child pornography. *Id.* The district court denied the defendant's motion to suppress, finding that because the drug paraphernalia found on the defendant's person would have led a neutral magistrate to issue a warrant to search the defendant's home, the doctrine of inevitable discovery applied. *Id.* at 845. On appeal, the defendant argued that discovery of the child pornography was not inevitable because the paraphernalia alone did not

5

establish sufficient probable cause to issue a warrant. *Id.* at 846-47. While the facts in *McManaman* differ substantially from the facts in this case,[6] and the Eighth Circuit declined to rule on this issue, it discussed the weight of evidence of drug paraphernalia in a probable-cause analysis:

> [The defendant's] argument [that the doctrine of inevitable discovery does not apply], however, significantly downplays the drug paraphernalia that was found on [his] person the night he was arrested. We have previously stated that the existence of drug paraphernalia "in or around a suspect's house is significant on the issue of probable cause."

*Id.* at 847 (quoting *United States v. Hernandez Leon*, 379 F.3d 1024, 1028 (8th Cir. 2004)).

In other words, the Eighth Circuit recognized that drug paraphernalia found on a suspect's *person* is "significant" in determining whether probable cause exists to search his home. *See id.* The Eighth Circuit has further held that, in addition to corroborating evidence of drug use or involvement in drug transactions, drug paraphernalia found in a person's trash is sufficient to establish probable cause to search his home without a warrant. *See, e.g.*, *United States v. Reinholz*, 245 F.3d 765, 776-77 (8th Cir. 2001) (drug paraphernalia in defendant's trash, plus defendant's previous drug charges, was sufficient to establish probable cause to search defendant's home); *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001) (drug paraphernalia and address book in trash, in addition to informant's tip that defendant was dealing drugs, was sufficient to establish probable cause to search defendant's home). The Eighth Circuit's automobile exception jurisprudence, which permits even further warrantless intrusion into a vehicle than is allowed into a home, supports an application of the probable cause analysis articulated in *McManaman* to vehicle searches.

---

[6] There are several differences between this case and *McManaman* – the defendant in *McManaman* admitted there was a shotgun in his home, the search was of the defendant's home and not his vehicle, and the defendant's wife apparently consented to the search, although she later denied giving consent. *Id.* at 844.

Here, Defendant had drug paraphernalia on his person at the time of his arrest. While he did not find any drugs on Defendant's person, Lt. Klunder was aware of Defendant's prior drug-related conviction and was aware of Defendant's apparent ongoing drug activity. Considering the totality of the circumstances, there was "a fair probability" that contraband would be found in the vehicle. *Kennedy*, 427 U.S. at 1140-41. Accordingly, probable cause triggered the automobile exception, and Defendant's motion to suppress should be denied.

### B. Was the Search a Lawful Inventory Search?

Another exception to the warrant requirement is the so-called "inventory search." Police may conduct a warrantless search of a lawfully-impounded vehicle, even in the absence of probable cause. *United States v. Hall*, 497 F.3d 846, 850 (8th Cir. 2007). Permitting officers to inventory the contents of vehicles placed in police custody addresses three needs: "the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." *Id.* (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). The "central question" in determining the validity of an inventory search is whether the search was "reasonable." *Id.* at 851 (citing *Kennedy*, 427 F.3d at 1143). Inventory searches that are "conducted according to standardized police procedures" are reasonable. *Id.* Here, Defendant does not contest the *manner* in which the search was conducted, but argues that the vehicle was not subject to impoundment under the provisions found in the impoundment policy adopted by the Cerro Gordo County Sheriff's Office.

According to the sheriff's impoundment policy, deputies "have the authority and discretion to impound any vehicle abandoned upon a public roadway, found to be a traffic hazard upon the public roadway, or which is suspected to have been used in the

commission of a public offense."[7] The policy identifies six circumstances under which the vehicle is considered "abandoned." Lt. Klunder conceded at the hearing that Defendant's vehicle did not meet any of the listed criteria. Furthermore, Klunder acknowledged that the vehicle was lawfully parked and did not constitute a "traffic hazard." Accordingly, if impoundment of the vehicle was authorized – thereby requiring an inventory search – the Government must establish that it was "suspected to have been used in the commission of a public offense."

Lt. Klunder did not observe Defendant commit any traffic offense prior to stopping. Moreover, there is no evidence that the vehicle was used to allegedly violate a no contact order, which was the basis for Defendant's arrest. At the time of hearing, counsel for the Government argued that it was suspected the vehicle was used for the offense of possession of marijuana. While the issue presented is therefore similar to that found in the analysis of the automobile exception – whether contraband would be found in the vehicle – the Government asserts that the standard here is "reasonable suspicion," rather than "probable cause."

The impoundment policy itself does not state that an officer's "suspicion" must be "reasonable." The policy simply states that to justify impoundment, an officer must "suspect" the vehicle was used to commit a public offense. If the policy does not require an officer's suspicion be reasonable, however, then any suspicion at all would justify the search, giving an officer unfettered discretion to search any vehicle. The Court believes a "reasonableness standard" may be inferred.[8] The issue before the Court, then, is whether Lt. Klunder had a "reasonable suspicion" that Defendant's vehicle was "used in

---

[7] *See* Defendant's Exhibit A (docket number 17-2) at 2.

[8] The Court notes Cerro Gordo County was free to adopt a broad impoundment policy, calling for impoundment whenever the driver is taken into custody and no other authorized person is present to take custody of the vehicle, and instead chose to specifically require that officers "suspect" criminal activity before impounding a vehicle.

8

the commission of a public offense."[9] The Government argues that because Defendant had drug paraphernalia on his *person*, Lt. Klunder had a reasonable suspicion that the *vehicle* was used in the commission of drug or drug paraphernalia possession.

In *Ornelas v. United States*, the Supreme Court cautioned that the standards for determining what constitutes "reasonable suspicion" and "probable cause" are "not readily, or even usefully, reduced to a neat set of legal rules." 517 U.S. 690, 696 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)) (internal quotation marks omitted). "They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." *Id.* The Supreme Court has indicated, however, that the two concepts have meaningful differences:

> We have described reasonable suspicion simply as "a particularized and objective basis" for suspecting the person stopped of criminal activity, *United States v. Cortez*, 449 U.S. 411, 417-418 (1981), and probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found, see *Brinegar*, *supra*, at 175-176; *Gates*, *supra*, at 238.

*Id.* Despite these differences, "[t]he principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Id.*

The reasonable suspicion standard, however, "is less demanding than the standard of probable cause that governs arrests and full-scale Fourth Amendment searches." *United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2000). Because the Court has already found that probable cause existed to believe contraband could be found in the vehicle – thereby justifying Lt. Klunder's search of Defendant's vehicle under the automobile exception –

---

[9] Defendant's Exhibit A (docket number 17-2) at 2.

9

the Court necessarily concludes that Lt. Klunder had a reasonable suspicion that the vehicle was used in the commission of a public offense, *i.e.*, possession of marijuana. Nonetheless, if the District Court finds that probable cause did not exist, I address whether Lt. Klunder had a reasonable suspicion that Defendant's vehicle was used in the commission of a public offense.

In further clarifying the test for determining whether a reasonable suspicion exists, the Supreme Court stated that "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).[10] The Eighth Circuit has further stated that "the officers must be acting on facts directly relating to the suspect or the suspect's conduct." *United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir. 1998). However, an officer's inventory search may not be "merely a ruse for general rummaging in order to discover incriminating evidence."*United States v. Frasher*, 632 F.3d 450, 454 (8th Cir. 2011) (quoting *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005)) (internal quotation marks omitted). In determining whether a reasonable suspicion exists, courts should examine "the totality of the circumstances, in light of the officer's experience." *United States v. Foley*, 206 F.3d 802, 806 (8th Cir. 2000) (quoting *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997)) (internal quotation marks omitted); *see also United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011) ("In considering the reasonableness of an officer's suspicion, 'we must determine whether the facts *collectively* provide a basis for reasonable suspicion, rather than determine whether each fact separately establishes such a basis.'") (quoting *United States v. Stachowiak*, 521 F.3d 852, 856 (8th Cir. 2008)).

---

[10] The Court notes that while both *Wardlow* and *Terry* considered the question of whether there was a reasonable suspicion to conduct a traffic stop as opposed to an inventory search, the analysis is the same for both situations.

The Eighth Circuit has found that officers had a reasonable suspicion that a suspect was violating the law with less evidence than present here. In *United States v. Stewart*, officers stopped the defendant because they were suspicious of his presence in a high-crime neighborhood. 631 F.3d 453, 454-55 (8th Cir. 2011). Fearing that the defendant possessed a weapon, the officers conducted a protective search of the vehicle. *Id.* at 455. The officers justified the search on the grounds that they knew defendant had prior convictions for drugs and violent behavior, there were inconsistencies in the defendant's answers to their questioning, they were concerned with the defendant's constant moving and reaching inside the vehicle, the stop occurred late at night, and a pat-down search revealed drug paraphernalia in the defendant's pocket. *Id.* at 455-59. The Court concluded that, based on these circumstances, the officers' suspicion that defendant was armed and dangerous was reasonable, despite the fact that his possession of paraphernalia was not an arrestable offense under Nebraska law and they had no other evidence that the defendant had actually committed a crime. *Id.*

Here, in addition to Lt. Klunder's knowledge of Defendant's past and current drug activity, he found illegal drug paraphernalia on Defendant's person. Analogizing to the Eighth Circuit's reasoning in *Stewart*, it appears reasonable for an officer to suspect the vehicle Defendant just exited contained additional paraphernalia or drugs. Arguably, it may be more reasonable to suspect that an individual who only possesses drug paraphernalia on his person would be keeping the drugs he plans to use with that paraphernalia close by, such as in his vehicle, as opposed to an individual who actually had drugs on his person. Lt. Klunder's suspicion was not merely a "hunch," nor was it "inchoate" – it was based on "particular" facts that were "directly" related to Defendant's conduct. Defendant was already in possession of contraband immediately before Lt. Klunder searched his vehicle. Considering the totality of the circumstances, I believe sufficient evidence existed to create a reasonable suspicion that Defendant's vehicle was used in the commission of a public offense. Because Lt. Klunder's inventory search of

11

Defendant's vehicle complied with the standardized procedures stated in the Cerro Gordo County impoundment policy, the search was constitutional. For these reasons, the Court finds that Defendant's motion to suppress should be denied.

## VI. RECOMMENDATION

I respectfully recommend that the Motion to Suppress (docket number 17) filed by the Defendant on October 5, 2012 be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on October 17, 2012.*

DATED this 24th day of October, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA